# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

**CEDEAL HARPER**,

      **Petitioner,**

v.                                                                                  **Case No.: 3:13-cv-23467**


**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex**

      **Respondent.**


## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner Cedeal Harper's ("Harper") *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2); Respondent's Motion for Summary Judgment, (ECF No. 10); Petitioner's Motion for Summary Judgment, (ECF Nos. 17, 21); and five incidental motions filed by Petitioner, (ECF Nos. 3, 12, 13, 15, 28). By standing order, this case was referred by the Honorable Robert C. Chambers, United States District Judge, to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having fully considered the material issues in this action, the undersigned respectfully recommends that the presiding District Judge **GRANT** Respondent judgment as a matter of law on the ground that Harper has procedurally defaulted his federal habeas claims; **DENY** Petitioner's Motion for Summary Judgment, and

**DISMISS** this action, **with prejudice**. In addition, the undersigned recommends that the District Court **DENY** Petitioner's remaining motions as they are moot.

## I. Relevant Factual Background and Procedural History

On the morning of July 28, 2004, Wendy Morgan, a local crack addict and prostitute, was shot to death on the streets of Huntington, West Virginia. (ECF No. 10-12 at 71). Shortly thereafter, Rafelle Harris and Harper were charged with Ms. Morgan's murder. Harris and Harper, part of a drug trafficking organization from Detroit, Michigan, allegedly shot Ms. Morgan to punish her for stealing drugs and money from Harper. Harris ultimately pled guilty to second degree murder and was sentenced to a forty-year term of imprisonment. (*Id.* at 80). Harper went to trial, and on April 19, 2006, was found guilty of first degree murder. (ECF No. 10-9 at 304). He was sentenced to a life term of imprisonment with mercy. (ECF No. 2-5 at 8). Harper was subsequently re-sentenced on several occasions to allow him the opportunity to file a direct appeal of his conviction to the Supreme Court of Appeals of West Virginia ("West Virginia Supreme Court"). The last re-sentencing occurred on April 30, 2010. (*Id.*). However, to date, Harper has not filed an appeal.

On December 12, 2008, Harper timely filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Cabell County, which was assigned Case No. 08-C-1050. (ECF No. 2-5 at 8). On March 6, 2012, while his state habeas action was still pending, Harper filed his first petition under 28 U.S.C. § 2254 in the Southern District of West Virginia. (S.D.W.V. Case No. 3:12-cv-00653, ECF No. 2). On January 24, 2013, the District Court dismissed without prejudice Harper's federal habeas action for failure to exhaust state remedies. (S.D.W.V. Case No. 3:12-cv-00653, ECF No. 44).

On May 15, 2013, Harper's state habeas petition was denied by the Circuit Court of Cabell County. (ECF No. 2-5 at 8-13). On June 3, 2013, Harper timely noted his appeal of the decision to the West Virginia Supreme Court, and a scheduling order was issued, which required Harper to perfect his appeal by September 16, 2013. (*Id.* at 16). On July 19, 2013, Harper filed a "motion for leave to exceed the [40-page] limit for his brief, and attached his brief thereto." (*Id.* at 15). The West Virginia Supreme Court denied Harper's motion and directed him to file a brief of appropriate length by September 16, 2013. (*Id.*). On August 6, 2013, Harper filed a motion to reconsider his motion to exceed the page limit. (ECF No. 16 at 3). The West Virginia Supreme Court did not rule on his motion prior to September 16, 2013, nor did Harper submit a brief of acceptable length. (*Id.*).

Instead, on September 23, 2013, Harper filed the instant § 2254 action, alleging that he had exhausted his state court remedies by virtue of his failure to submit an acceptable appellate brief to the West Virginia Supreme Court. (ECF No. 2 at 7). On November 6, 2013, the West Virginia Supreme Court denied Harper's motion to reconsider, but extended the deadline for him to submit his appellate brief to December 30, 2013. (ECF No. 10-17 at 2). Accordingly, in this action, Respondent filed a motion for summary judgment on the ground that Harper's appeal in the West Virginia Supreme Court was pending; therefore, he had not yet exhausted his state court remedies. (ECF No. 10). Harper filed a response to the motion, arguing that he had satisfied his exhaustion prerequisite, or in the alternative, exhaustion was futile and should be excused. (ECF No. 16). According to Harper, he had filed an appellate brief, which the West Virginia Supreme Court refused to accept on the basis of its length. (*Id.* at 3). Harper in turn refused to abide by the Court's "unreasonable" page

limitation and did not intend to file another, shorter brief. (*Id.* at 4). Rather than pursue his state appeal, Harper filed a motion for summary judgment in this court, arguing that he was entitled to relief as a matter of substantive law. (ECF No. 17). On January 15, 2014 the West Virginia Supreme Court of Appeals issued a Notice of Intent to Dismiss his action. On March 11, 2014, Harper independently filed a Motion to Withdraw his appeal, which was granted by the West Virginia Supreme Court on March 12, 2014.

      Although Harper's appeal to the West Virginia Supreme Court has now been dismissed, neither party has supplemented its filings in this action to address the effect of the dismissal on Harper's request for federal habeas relief. Thus, Respondent has not officially raised the affirmative defense of procedural default. "This Court, however, may *sua sponte* raise the issue of procedural default where it would significantly advance judicial efficiency." *Smith v. Virginia,* No. 3:11-CV-06, 2012 WL 618973, at *3 (E.D. Va. Feb. 24, 2012) (citing *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999)); *Trisler v. Mahon,* Civil Action No. 3:09cv167, 2010 WL 772811, at *3 (E.D. Va. Mar. 3, 2010)). In this case, the State has consistently asserted the defense of exhaustion, and only recently was Harper's state habeas appeal voluntarily dismissed, thereby transforming the defense from one of exhaustion to one of procedural default. However, the State had no way of predicting in its response to Harper's § 2254 petition that Harper would voluntarily dismiss his state court appeal prior to its adjudication by the West Virginia Supreme Court, and during the pendency of this action. Given the timing of the dismissal and Harper's control over that outcome, the undersigned finds that the issue of procedural default is properly before the Court. Moreover, the record is sufficiently well-developed that the exceptions of cause and prejudice and

miscarriage of justice can be adequately considered.

## II. Discussion

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in state custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As a prerequisite to filing a § 2254 action, the habeas petitioner must exhaust his state remedies. 28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires the petitioner to fairly present the federal constitutional issues to the state courts and allow them "one full opportunity" to resolve the issues. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Considering that the purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Picard,* 404 U.S. at 275, fair presentation demands that the state courts be fully informed of "'both the operative facts and the controlling legal principles.'" *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (internal quotations omitted). Generally, when a petitioner has failed to exhaust his state court remedies, a federal habeas petition should be dismissed. *See McDaniel v. Holland*, 631 F.Supp. 1544, 1545 (S.D.W.V. 1986) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 477 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)).

In West Virginia, exhaustion is accomplished in one of three ways; by (1) presenting the federal constitutional issues directly to the West Virginia Supreme Court through an appeal of the conviction or sentence; (2) petitioning for a writ of

habeas corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice following a determination on the merits; or (3) petitioning for a writ of habeas corpus in the appropriate circuit court followed by an appeal of the judgment to the West Virginia Supreme Court, if the result is adverse. *See Moore v. Kirby*, 879 F.Supp. 592, 593 (S.D.W.V. 1995); *McDaniel*, 631 F. Supp. at 1545. The "core element of the doctrine of exhaustion involves the requirement that a claim have 'been fairly presented to the state courts'" and "includes an opportunity for review by the highest court in the state." *Moore*, 879 F. Supp. at 593 (internal quotations omitted). Thus, in order to satisfy the exhaustion requirement and avoid procedural default, "a petitioner 'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Farabee v. Johnson*, 129 F. App'x 799, 802 (4th Cir. 2005) (quoting *O'Sullivan*, 526 U.S. at 845).

In the present action, Harper unsuccessfully pursued a writ of habeas corpus in the Cabell County Circuit Court, and subsequently noted an appeal of the adverse judgment to the West Virginia Supreme Court. However, he failed to perfect his appeal, and then voluntarily withdrew his appeal before the West Virginia Supreme Court had an opportunity to review his case. Accordingly, his federal habeas claims are not properly exhausted. *See Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (finding petitioner's federal habeas claims were not properly exhausted where state court granted his motion to voluntarily dismiss the appeal of his post-conviction action); *Laicer v. District Court Wichita Kansas*, No. 13-3185-SAC, 2013 WL 5819771, at *3 (D. Kan. Oct. 29, 2013) (finding petitioner had failed to exhaust his claims by way of direct appeal where petitioner's motion for voluntary dismissal of his direct appeal

was granted by the state appellate court).

Because Harper is now procedurally barred from appealing the state circuit court's denial of habeas relief, *see* Rule 5(b), West Virginia Rules of Appellate Procedure, he is considered to have procedurally defaulted on his claims before the West Virginia Supreme Court. *See Singleton v. Eagleton*, 425 F. App'x 228, 231 (4th Cir. 2011); *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991)). Consequently, Harper's federal habeas petition is unreviewable unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Wilson v. Ozmint*, 352 F.3d 847, 868 (4th Cir. 2003) (quoting *Coleman*, 501 U.S. at 735 n.1).

To establish cause, a prisoner must ordinarily "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Examples of external impediments constituting cause include "(1) interference by officials that makes compliance with the State's procedural rule impracticable; (2) a showing that the factual or legal basis for a claim was not reasonably available to counsel; (3) novelty of the claim; and (4) constitutionally ineffective assistance of counsel." *Wright v. Angelone,* 151 F.3d 151, 160 n. 5 (4th Cir. 1998) (internal citations and quotations omitted); *see also Farabee*, 129 F. App'x at 802 (quoting *Murray*, 477 U.S. at 488) (Objective factors constituting cause include "factual or legal basis for a claim that was not reasonably available, interference with the defense by government officials, or constitutionally ineffective assistance of counsel.") In order to establish

actual prejudice, "the movant must show that the alleged error resulted in an 'actual and substantial disadvantage,'" as opposed to a mere possibility of prejudice. *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray,* 477 U.S. at 494).

Here, Harper is unable to establish cause because there was no objective external factor that impeded his ability to exhaust his state habeas claims.[1] In his response to the State's motion for summary judgment, Harper declared that he did "not intend on filing another appellate brief in the state supreme court," stating that "[i]f they don't want to adjudicate the brief that the petitioner has filed that's their business." (ECF No. 16 at 3-4). However, Harper's obstinate refusal to comply with the West Virginia Supreme Court's forty-page limit simply does not constitute good cause for failing to perfect his appeal, particularly where the page limit "is itself a reasonable and consistently applied state procedural rule." *Weeks v. Angelo*, 176 F.3d 249, 272 (4th Cir. 1999) (holding that the Virginia Supreme Court's fifty-page limit did not constitute cause sufficient to excuse procedural default). Moreover, Harper voluntarily withdrew his state court habeas appeal after having been advised by this Court that it

---

[1] In his § 2254 petition, Harper did allege that he "hand wrote another appellate brief to send to the West Virginia Supreme Court but due to the petitioner being indigent and the Respondent, David Ballard refusing to send said appellate briefs to the West Virginia Supreme Court," he failed to perfect his appeal by the September 16, 2013 deadline. (ECF No. 2 at 7). The undersigned regards this claim with great skepticism given that Harper was able to file the instant § 2254 petition one week later, consisting of over 120 pages of handwritten briefing and an additional 60 pages of accompanying exhibits, (ECF Nos. 2, 2-1, 2-2, 2-3, 2-4, 2-5, 2-6, 2-7, 2-8), as well as a Motion to Reconsider the 40-page limitation, which he filed with the West Virginia Supreme Court in August. (ECF No. 16 at 3). At any rate, Harper has failed to offer any legitimate explanation for his failure to submit a compliant appellate brief subsequent to the West Virginia Supreme Court's extension of the deadline to December 30, 2013; particularly if, as he claims, he had already handwritten said brief. Indeed, at the time of filing his Response to the Respondent's Motion for Summary Judgment in the instant case, Harper had over two weeks remaining to perfect his State habeas appeal, yet he stubbornly refused to submit an acceptable appellate brief to the West Virginia Supreme Court. (ECF No. 16 at 3-4). Notably, on the same day Harper filed his opposition to Respondent's motion for summary judgment, he filed six other documents in this Court, totaling 256 pages. Consequently, even if David Ballard prevented Harper from perfecting his appeal in September as Harper claims, Ballard certainly presented no such obstacle in December.

could not consider his constitutional challenges until he had exhausted them in the state court system, which ***required*** presentation of the issues to the West Virginia Supreme Court. (*See* S.D.W.V. Case No. 3:12-cv-00653, ECF Nos. 33, 44). Accordingly, Harper does not meet the requisites of a cause and prejudice exception to procedural default.

Harper is also unable to establish that a miscarriage of justice will occur if federal review of his habeas petition is barred. To demonstrate a miscarriage of justice, Harper must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Wolfe v. Johnson*, 565 F.3d 140, 164 (4th Cir. 2009). In doing so, he must establish that "it is more likely than not, in light of all the evidence, that 'no reasonable juror' would have convicted him." *Schlup*, 513 U.S. at 327-28. Although Harper does include a claim of "legal, factual and/or actual innocence and/or newly presented evidence constituting actual innocence," (ECF No. 2-1 at 23), the crux of his argument is that it is legally impossible for him to be guilty of murdering Wendy Morgan when his co-defendant, Rafelle Harris, pled guilty to the murder. (*Id.* at 23-25). According to Harper, he was not charged with and convicted of conspiracy to commit murder, or aiding and abetting, or being an accessory. (ECF No. 2-1 at 23-25). Instead, Harper was charged with and convicted of murdering Wendy Morgan, which he obviously could not have done given that Harris had already admitted that he, in fact, was the one who fatally shot Wendy Morgan. (*Id.*). However, Harper's argument rests on a fundamental misunderstanding of West Virginia criminal law. West Virginia law makes clear that:

> Under the "acting in concert with" or "concerted action" theory of culpability, it was not necessary for the State to prove that the [petitioner] was the absolute perpetrator of the crime, but rather that he was present at the commission of the crime and that he aided and abetted it; in other words, that he was a principal in the second degree to the commission of the crime.

*State v. Foster*, 656 S.E.2d 74, 80 (W. Va. 2007). Indeed, the first instruction offered by the State at Harper's trial explained the concerted action theory, advising the jury that Harper could be held responsible "as if he were the absolute perpetrator of the crime" if he counseled, planned, procured, or instigated the murder, or if he was actually or constructively present at the scene of the shooting and acted with criminal intent, contributing to the criminal act of the absolute perpetrator. (ECF No. 10-9 at 231). Harper admitted that he was present at the time Wendy Morgan was killed. (ECF No. 10-9 at 155-61). He denied knowing that Harris intended to shoot her, and he denied participating in the murder. (*Id.*). However, the State's theory all along was that Harris and Harper planned and executed the murder together. Harris admitted that he shot and killed Wendy Morgan, but only after Harper's shot failed to kill her. (ECF No. 10-11 at 265). Based upon Harris's testimony, the murder was a concerted act involving both Harper and Harris. Thus, regardless of Harris's plea, and despite evidence that Harper was not the one who fired the fatal shot, Harper could still be legally, factually, and actually guilty of Wendy Morgan's murder in the State of West Virginia.

Alternatively, Harper alleges that certain "evidence or information suppressed by the prosecutor" and other "information not presented at trial by trial counsel" may help prove his innocence. (ECF No. 2-1 at 25). Such evidence includes pre-trial statements provided by all trial witnesses and prospective witnesses, including Talese Brown, James Lewis, Frederick Bowie, and Mark Matthew; as well as pre-trial test

results from Rafelle Harris's polygraph examination; evidence that Harper "was in possession of a different firearm, which was not the murder weapon, on the night of the crime;" the addresses and affidavits of all sources of information used in the criminal complaint; and various information requested by Harper in a pre-trial discovery motion, to which the State had previously objected. (ECF No. 2-2 at 5-12). In a similar vein, Harper blames trial counsel for failing to obtain said information, as well as for failing to have any physical evidence recovered from the crime scene "tested and evaluated by an independent out-of-state laboratory," failing to "obtain a forensic expert, at government expense," and failing to require his private investigators to testify at trial. (ECF No. 2-3 at 18-25; 2-4 at 7-8, 11). Although Harper avers that this evidence could have been used to impeach the State's witnesses or otherwise "buil[d] a greater or better defense for the petitioner," (ECF No. 2-4 at 11), this claim is largely speculative, and in light of the record, unsupportable. To the contrary, it is clear from the trial transcript that the State's evidence against Harper was overwhelming.

At trial, multiple witnesses testified that prior to her murder, Wendy Morgan had stolen a quantity of crack cocaine and cash from a house out of which Harper had been selling drugs. (ECF Nos. 10-11 at 95-100; 10-12 at 104-105, 114-15). As a result, both Ms. Morgan and other drug users in the Huntington area were aware that Harper and a fellow drug dealer, Bunny Holmes, were offering a reward to locate Ms. Morgan. (ECF Nos. 10-11 at 103, 165-66; 10-12 at 104-05, 114-15). Whitney Helena Borders testified that on July 28, 2004, the morning of Ms. Morgan's death, while she and Ms. Morgan were at a friend's house located at Sixth Avenue and Fourth Street, she overheard a woman named Heather Davis telephone Harper to tell him of Ms. Morgan's whereabouts. (ECF No. 10-12 at 120-125, 144). Video surveillance footage

taken from a BP gas station located at Fifth Avenue and Sixth Street showed Harper and Rafelle Harris arriving at the station around 4:45 a.m., and Heather Davis meeting them around 4.50 a.m. (ECF No. 10-11 at 12-13; 10-12 at 200-05). In the video, Harper was wearing a large winter jacket, and Heather Davis pointed in the direction of the house where Ms. Morgan was located. (ECF No. 10-11 at 13; 10-12 at 204-05).[2] Another witness, Maddie Sias, testified to hearing three loud popping sounds between 5:00 a.m. and 5:30 a.m. on July 28, and when she awoke later in the morning, she observed police activity directly beside her house, located at 524 Fifth Street. (ECF No. 10-11 at 122-23). Witness Talese Brown testified that approximately two minutes before the gunshots, she ran into Ms. Morgan on Fifth Street, between Fifth and Sixth Avenues. Ms. Morgan was walking with Rafelle Harris and a man named Dale Ward. (*Id.* at 132-34). Talese Brown testified that she invited Ms. Morgan to leave the two men and hang out with her, but Ms. Morgan declined, stating that she was on her way to a date. (*Id.* at 136). Talese Brown testified that shortly afterward, she heard what she thought were either gunshots or firecrackers, and then she saw Harper and Harris running together on Fifth Street and Sixth Avenue. (*Id.* at 132-39). Talese Brown testified that she called out to them, and asked "were those gunshots or firecrackers," but when she saw what she believed to be a gun in Harper's hand, she said, "Never mind." (*Id.* at 139-40). At approximately 6:50 a.m. that morning, a lady walking her dogs found Ms. Morgan's body on Fifth Street between Fifth and Sixth Avenues. (*Id.* at 197). An autopsy confirmed that Ms. Morgan had been shot three times with a .22 caliber weapon. (ECF

---

[2] At trial, Heather Davis testified that she was actually pointing toward her stepmother, who was "parked right there on the side of the building," where she was waiting to purchase crack cocaine. (ECF No. 10-11 at 82-83). Nevertheless, Heather Davis did testify that upon meeting up with Harris and Harper, they asked her where Ms. Morgan was, and she in turn did point her location out to them. (*Id.* at 76-79, 91).

No. 10-11 at 208-210).

The testimony of Rafelle Harris, Harper's co-defendant, largely corroborated this cumulative narrative presented by the State. Harris testified that on the day of the incident, he met up with Harper, who "was talking to Heather Davis on the phone. She said that she knew where Wendy was." (*Id.* at 257). Harris testified that Harper gathered some long coats and a pistol, and then the two of them went to the BP gas station, after which Heather Davis arrived and told them where Ms. Morgan was located. (*Id.*). Harper and Harris left Heather Davis, and went to a friend's apartment located across the alley from the BP station, where they met up with Dale Ward. (*Id.* at 260-61). Dale Ward then went to the house where Ms. Morgan was located, and told her that "he had a trick" for her. (*Id.* at 263). Ms. Morgan left the house and joined Dale Ward and Rafelle Harris in the alley near the BP station, at which point Harper called Harris to confirm that she was with them. (*Id.*). Harris testified that when Harper approached, Ms. Morgan "freaked out" and Harper "fired a shot," and then "froze up," after which Harris grabbed the gun from Harper and fired it, killing Ms. Morgan. (*Id.* at 265). After firing it, Harris returned the firearm to Harper to dispose of, and the two of them "took off." (ECF No. 10-11 at 265). Based upon this and other testimony, the jury returned a unanimous guilty verdict against Harper, finding him guilty of First Degree Murder. (ECF No. 10-9 at 304).

Harper has plainly failed to present any evidence or information which would demonstrate that it is more likely than not that no reasonable juror would have convicted him. *See Schlup*, 513 U.S. at 327-28. Accordingly, he is unable to establish the applicability of the miscarriage of justice exception to his procedural default.

For these reasons, the undersigned **FINDS** that Harper's state habeas claims are procedurally defaulted, and are therefore unreviewable by the federal district court.

### III. Proposal and Recommendations

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1. Petitioner's Petition for Writ of Habeas Corpus by a Person in State Custody, (ECF No. 2), be **DISMISSED, with prejudice**;

2. Respondent's Motion for Summary Judgment, (ECF No. 10), be **GRANTED** on the ground that Harper's procedural default in state court bars this Court's review of his constitutional claims; and

3. Petitioner's Motion for Summary Judgment and the incidental motions, (ECF Nos. 3, 12, 13, 15, 17, 21, 28), be **DENIED**, as moot.

Petitioner is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474

U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner, Respondent, and counsel of record.

**FILED:** July 3, 2014.

Cheryl A. Eifert
United States Magistrate Judge